In the Matter of THOMAS STEPHENS, Respondent, *v.* HENRY MARSHALL and GEORGE CAULFIELD, Appellants.

*Habitual drunkard — his committee should not allow him "spending money" — when the committee may be charged with the costs of an accounting — when they will not be allowed commissions.*

The committee of an habitual drunkard on proving their accounts claimed to be allowed the sum of thirty dollars per month,, allowed by them to the inebriate for spending money. The court refused to allow more than seventy-five dollars a year for that purpose.

*Held,* no error; that it would have been proper to refuse to allow any sum for that purpose.

When the committee fail to file the inventories required by law, and do not on the commencement of the accounting disclose all the property they received, they may be properly charged with one-half of the expenses of the accounting,

Though the fact that a trustee is charged with moneys lost by his negligence does not deprive him of his right to commissions, yet where he is charged with the moneys because he has expended them improperly and in a manner subversive of the purposes of the trust, the court may properly refuse to allow him any commission.

Appeal by Henry Marshall and George Caulfield, a committee of Thomas Stephens, from an order of the Special Term, made after certain exceptions taken by said Marshall and Caulfield to the report of a referee, made on an accounting of said Marshall and Caulfield, as the committee of said Stephens, as an habitual drunkard.

February, 1873, Stephens was adjudged an habitual drunkard, and the appellants were appointed his committee.

October 3, 1877, an order was made adjudging the reformation of said Stephens, superseding the inquisition, etc., and directing his committee to deliver to him his property, and to pass their accounts before George W. Parsons, Esq., referee, appointed for that purpose.

The testimony showed that some three or four months after the committee was appointed, they concluded to take Mr. Stephens away from the city of New York and keep him with a Mr. Budd, who lived in a little village in Greene county. They agreed to give Mr. Budd $100 a month, thirty dollars of which Mr. Budd was to give Mr. Stephens for spending money. Stephens remained with

Budd until he recovered. The referee found that of the thirty dollars a month that Budd was to have given Stephens he had failed to give to him what, in the time Stephens staid with him, amounted to $675. The committee paid it to Budd, but Budd did not pay it to Stephens. That item the referee disallowed to the committee. The court held that the thirty dollars a month was too much to have given Stephens for spending money, and held that the committee should have given him but seventy-five dollars per annum, and charged the committee with the difference, $1,173.56.

An item of twenty-six dollars and twenty-five cents, claimed to have been for expenses incurred in the transfer of Brooklyn property bought by Stephens for the benefit of his sister, was also disallowed.

*Wheeler H. Peckham*, for the committee, appellants.

*John Graham*, for Thomas Stephens, respondent.

BARRETT, J.:

In the main we concur in all the conclusions arrived at by the Special Term. Not a penny should have been allowed to the inebriate for spending money. What he needed ought to have been purchased for him. All proper recreation could have been provided without intrusting him with the means of indulging his diseased appetite. The spending money was, in fact, a downright temptation to him. We do not look upon this as a mere error of judgment upon the part of the committee. It was, to say the least, gross negligence, not far removed from the line of bad faith. It exhibited a reckless disregard of the true interests of the unfortunate man confided to their care. We agree with the learned counsel for the respondent, that if any error was committed by the court below upon this head it was upon the side of leniency to these trustees.

The item of twenty-six dollars and twenty-five cents was also properly disallowed. It was not made clearly to appear that Stephens, if in the possession of his faculties, would, in all probability, have paid this item himself. The expenditure was not, therefore, brought within the case of *Ex parte Heeney* (2 Barb. Ch., 326).

The testimony with regard to it was by no means clear, and as owing to the failure to file the proper inventories every presumption is to be taken againt the committee (*In re Carter*, 3 Paige, 146) we think the ruling of the Special Term should be sustained.

The reasons assigned by the court below for charging the committee with one-half the expenses of the accounting are satisfactory. There was no error in the statement contained in Mr. Justice Van Vorst's opinion that the committee. delayed the disclosure of the amount of moneys remaining in their hands to the credit of Stephens. An account was, it is true, submitted at the commencement of the reference, but it was incomplete and was subsequently amended in the particular mentioned. Apart from this we think the conclusion of the Special Term was warranted by the failure to file regular inventories as required by law (which would have facilitated the accounting), and by the fact that part of the expense was due to the investigation with regard to the spending money improperly allowed to Stephens.

The question as to the commissions is not altogether free from doubt, but upon the whole, we are inclined to agree with the court below, that the committee have forfeited their right to compensation. Ordinarily, it is true, a trustee is sufficiently punished for an act of negligence by being charged with the sum lost thereby. It was held in *Meacham* v. *Sternes* (9 Paige, 399) that a trustee is entitled to commissions upon sums with which he is so charged, in consequence of losses arising from his negligence. But there is a plain distinction between moneys lost to an estate by the negligence of the trustee, and moneys charged to the trustee because their expenditure was improper and subversive of the purposes of the trust. The former is an isolated act of negligence, consistent with general good management. The latter goes to the very heart of the trusteeship and stamps it with general mismanagement. It was here the duty of the committee to resort to all reasonable means for the restoration of the inebriate to his normal condition. The failure to perform that duty is transparent and conspicuous. They did the very reverse. They added fuel to the flame. It was indeed an error of judgment, and we must be permitted to say, a very grave one, to send this man away to a remote country town, where, instead of the careful treatment which he might have had in some proper

asylum like that on Ward's Island, he was left in the hands of a person not only devoid of experience or training in the care of inebriates, but who constantly provided him with liquor obtained from a neighboring manufacturer. This was bad enough, but when it is combined with improvident expenditure and highly reprehensible provision for continued indulgence, it stamps the trusteeship as faithless. After a full consideration of the evidence, we cannot bring ourselves to think that this committee is entitled to commissions.

The order appealed from should, therefore, be affirmed, with costs. If there has been any clerical error to the disadvantage of the committee, as would seem to be the case, it can be corrected at the Special Term, or if the facts are not disputed, and there is no substantial contest about it, upon the settlement of the order on this appeal.

DAVIS, P. J., and BRADY, J., concurred.

Order affirmed, with costs.